**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DREAM BUILDERS OF MOBILE, LLC,** | ) | |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CASE NO.: 1:24-cv-329** |
| | ) | |
| **SCOTTSDALE INSURANCE COMPANY,** | ) | |
| | ) | |
| **JOHN J PILGER, III INSURANCE AGENCY, INC.,** | ) | |
| | ) | |
| **FICTITIOUS DEFENDANTS A-C,** | ) | |
| **FICTITIOUS DEFENDANTS D-F,** | ) | |
| **FICTITIOUS DEFENDANTS G-I, and** | ) | |
| **FICTITIOUS DEFENDANTS J-L,** | ) | |
| | ) | |
| **Defendants.** | ) | |

---

## NOTICE OF REMOVAL

---

COMES NOW Defendant, Scottsdale Insurance Company ("Scottsdale"), and files this Notice of Removal of the foregoing cause from the Circuit Court of Mobile County, Alabama, to the United States District Court for the Southern District of Alabama, Southern Division pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Initially, Scottsdale preserves any and all defenses to personal jurisdiction, service of process, insufficient service of process, failure to state a claim, and/or any other defenses available to Scottsdale under Fed. R. Civ. P. 12(b) and does not in any way waive any such defenses in filing this removal. As grounds for removal, Scottsdale shows unto the Court the following:

# I. <u>INTRODUCTION</u>

1.      Plaintiff, Dream Builders of Mobile, LLC, ("Builders"), initiated this civil action against Scottsdale on or about August 6, 2024, in the Circuit Court of Mobile County, Alabama, Civil Action No. 02-CV-2024-901999. [<u>See</u> Exhibit A – Complaint].

2.      Builders also asserts claims against Defendant John J Pilger, III Insurance Agency, Inc. ("Pilger"), as well as "Fictitious Defendants A-C," "Fictitious Defendants D-F," "Fictitious Defendants G-I," and "Fictitious Defendants J-L." (collectively, the "Fictitious Defendants") (collectively, with Scottsdale and Pilger, the "Defendants"). [<u>Id.</u>].

3.      Pursuant to 28 U.S.C. § 1446(a), true and correct copies of all pleadings, as well as copies of all process and other papers on file in the record of the state court action, which are within the possession, custody, and control of Scottsdale are attached hereto as Exhibit A.

4.      Service of the Summons and Complaint was accomplished upon Scottsdale on August 12, 2024. [<u>See</u> Exhibit A – Service Return from United States Postal Service]. Accordingly, this Notice of Removal is timely filed within the timeframe specified by 28 U.S.C. § 1446(b).

5.      This Notice of Removal is filed in the United States District Court for the Southern District of Alabama, Southern Division, the federal district and division embracing the place where the state court case was filed, as required by 28 U.S.C. §§ 1332 and 1441(a).

6.      Promptly after the filing of this Notice of Removal, Scottsdale is filing a copy with the Clerk of the Circuit Court of Mobile County, Alabama, as required by 28 U.S.C. § 1446(d).

7.      The Fictitious Defendants remain unidentified and need not consent to removal, as they have not "been properly joined and served." 28 U.S.C. § 1446(b)(2)(A). Further, although Pilger has not consented to the removal of this action, it has been fraudulently joined as a defendant

and "[a] fraudulently joined defendant need not consent to removal." *Restivo v. Bank of Am. Corp.*, 618 F. App'x 537, 540 n.5 (11th Cir. 2015).

8.      Although Scottsdale vigorously disputes the claims contained in Builders' Complaint, those claims are nevertheless a proper foundation for federal jurisdiction under 28 U.S.C. § 1332, as the properly joined parties are diverse and the amount-in-controversy requirement is satisfied. As discussed below, Pilger has been fraudulently joined as a defendant to this action and its citizenship should be ignored for diversity jurisdiction purposes. Likewise, the citizenship(s) of the Fictitious Defendants should be disregarded as defendants sued under fictitious names.

## II. <u>BACKGROUND</u>

9.      Builders is the named insured on an insurance policy issued by Scottsdale bearing Policy No. CPS7373626 (the "Policy"). [<u>See</u> Exhibit B – Policy]. The Policy provided, in part, Commercial Property Coverage to property located at 2480 Government Street, Mobile, Alabama 36606, which is designated in the Policy's Schedule of Locations as a church (the "Subject Property"). [<u>Id.</u> at 13]. The Policy had an effective date of May 27, 2021, and provided coverage through May 27, 2022. [<u>Id.</u> at 8].

10.     Builders' claims stem from alleged damage to the Subject Property (the "Loss"), and Builders asserts that "[d]uring the effective term of the Insurance Policy[,] representatives of [Builders] reported a claim under the Insurance Policy for damages to the Insured Property . . . to Scottsdale and/or Agency" (the "Claim"). [Exhibit A – Complaint at ¶¶ 16, 18].

11.     After Builders submitted its Claim, Builders alleges that Pilger "made representations to [Builders] that Agency was communicating with Scottsdale regarding

[Builders'] Claim" and that Pilger "took steps" and "made representations" to Builders that Pilger was "assist[ing] [Builders] with [Builders'] Claim." [Id. at ¶¶ 19, 51].

12.     Although Builders' Complaint itself does not describe the nature of the Loss or when the Loss occurred, through Pilger, Builders submitted a Property Loss Notice dated August 9, 2023, to Scottsdale, which stated that the Loss occurred on August 1, 2021, and described the Loss as "wind damage to the roof," which "leaked [and] caused inside damage to [the] structure." [See Exhibit C – Acord Property Loss Notice]. This Property Loss Notice also stated that Letitia Davis, who goes by "Vita" and was the contact point for Builders during the investigation and handling of the Claim, "said the loss was reported in 2021 but the claim was never filed as far as [Pilger personnel] can tell." [Id.].

13.     During the claims handling process, Letitia Davis of Builders confirmed that the Loss occurred in 2021. [Exhibit D – Letitia Davis Emails]. Both Ryan Davis and Letitia Davis of Builders further advised Scottsdale that Letitia Davis contacted an agent of Pilger named "Christie" to report the Loss, but that Christie never followed up with Builders regarding the reporting of the claim. [See id.; Exhibit E – Ryan Davis Email].

14.     Builders later provided to Scottsdale screenshots of text exchanges between Letitia Davis and Christie, which are attached hereto as Exhibit F. On July 29, 2021, Letitia texted Christie to inquire "about the adjuster at 2480 Government Street," where the Subject Property is located, as Letitia had not "heard from anyone." [See Exhibit F]. The same day, Christie responded that she was "c[hec]k[i]n[g] on [an] adjuster" and requested that Ryan Davis complete and return certain forms to process the Claim. [Id.]. On August 5, 2021, Christie contacted Letitia to advise "that someone will b[e] in touch with [Letitia] on [the] church [Claim] on Mon[day]," August 9, 2021. [Id.].

15.     However, on September 24, 2021, still having received no follow up on the Claim, Letitia texted Christie to advise that Builders "never heard back from the people about the church," that the delay was "causing a major problem for" Builders, and that Builders "will have to find a new insurance agent" if Christie did not assist. [Id.]. The same day, Christie apologized for the delay but advised that she "had planned to go in over the weekend to sort through everything." [Id.].

16.     Apparently, there was no further communication with Builders regarding its Claim, as Letitia Davis stated in an email to Patricia Robinson, the Scottsdale adjuster assigned to the Claim, on September 29, 2023, that "in 2021" Builders was not provided an update on its Claim. [See Exhibit D]. Moreover, according to a report by Robert Holman of Professional Adjusting Services, Inc. ("PASI"), the independent adjuster retained by Scottsdale to investigate the Claim in 2023, Ryan Davis stated that "he had filed a claim [in 2021], but that nobody was ever sent out to inspect the building, and that [Holman] was the first to visit after the date of loss." [See Exhibit G – PASI Narrative Report].

17.     In its Complaint, Builders alleges that because of Scottsdale's untimely or inadequate investigation of the Claim, Builders "took steps to mitigate the damage to the Insured Property." [Exhibit A – Complaint at ¶¶ 20-21]. During Scottsdale's investigation of the Claim, Builders provided Scottsdale with invoices and receipts from various contractors and suppliers for repairs to the Subject Property that were completed during the latter half of 2021. [See Exhibit H – Builders Repair Documentation].

18.     Builders then alleges that after it completed work or repairs to mitigate the damage to the Subject Property, "Scottsdale later disclaimed [Builders'] Claim, allegedly in part due to 'the need to inspect prior to repairs to confirm damages . . .'" [Exhibit A – Complaint at ¶ 22].

19.     Builders brings claims against Scottsdale for breach of the Policy (Count I) and bad faith (Count II), asserting that Scottsdale "fail[ed] to pay all benefits due under the Insurance Policy" and "committed various acts of bad faith for failure to pay or investigate [Builders'] Claim equating to actionable tortious conduct." [Id. at ¶¶ 29, 33].

20.     Additionally, Builders brings claims against Pilger for negligence (Count Three) and negligent training, hiring, and supervision (Count IV), contending that Pilger "had a duty to reasonably assist [Builders] with [Builders'] Claim" but "breached said duty when it failed to reasonably assist [Builders] with [Builders'] Claim." [Id. at ¶¶ 51-52].

## III.  BASIS FOR REMOVAL

21.     This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1), as the amount in controversy exceeds $75,000, exclusive of interest and costs, and diversity of citizenship exists between Builders and the properly joined Defendant, Scottsdale. As discussed below, Pilger has been fraudulently joined to this action and its citizenship should be ignored for diversity purposes. Likewise, the citizenship(s) of the Fictitious Defendants should be disregarded under 28 U.S.C. § 1441(b)(1). Therefore, this action could have originally been brought in this Court and is now properly removed to this Court.

**A.     The Policy's Service-of-Suit Clause Does Not Preclude Scottsdale's Right of Removal.**

22.     Initially, Builders asserts that "Scottsdale has contractually agreed to submit to the jurisdiction" of the Circuit Court of Mobile County, Alabama based upon the Service of Suit clause contained within the Policy, "which in part state[s]":

> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of American and will comply with all requirements necessary to give the Court jurisdiction.

[Exhibit A – Complaint at ¶ 9].

23.     Although it is true that such language – without more – would "constitute[] a waiver of the right to remove," *Russell Corp. v. Am. Home Assurance Co.*, 264 F.3d 1040, 1047 (11th Cir. 2001), Builders omits the next three (3) sentences of the clause, which states, *in toto*:

> It is agreed that in the event of the failure of the Company to pay any amount claimed to be due under this policy, the Company at the request of the Insured (or reinsured), will submit to the jurisdiction of any court of competent jurisdiction within the United States of America and will comply with all requirements necessary to give the Court jurisdiction. All matters which arise will be determined in accordance with the law and practice of the Court. In a suit instituted against any one of them under this contract, the Company agrees to abide by the final decision of the Court or of any Appellate Court in the event of an appeal. <u>However, nothing in this endorsement constitutes a waiver of company's right to remove an action to a United States District Court or to seek a transfer of a case to another court as permitted by the laws of the United States or of any state in the United States.</u>

[Exhibit B at 19] (emphasis added).

24.     Unlike the contractual language at issue in *Russell*, which did not contain an express reservation of the right to remove, 264 F.3d at 1047, the Service of Suit clause here clearly preserves Scottsdale's "right to remove an action to a United States District Court," [Exhibit B at 19], and courts within the Eleventh Circuit have found that such language "expressly reserve[s] rights to remove, remand, and transfer eligible cases." *See, e.g., Vazquez v. Great Lakes Reinsurance (UK) PLC*, 2009 U.S. Dist. LEXIS 138058, at *7-8 (S.D. Fla. Sep. 21, 2009). Accordingly, to the extent that Builders intends to argue that the Service of Suit clause forbids Scottsdale's removal of the present case, the clause pointedly reserves Scottsdale's right to do exactly that. *Id*.

**B.**     **There is Complete Diversity of Citizenship Among the Properly Joined Parties.**

25.     Jurisdiction under 28 U.S.C. § 1332 requires "complete diversity." The citizenship of every plaintiff must be diverse from the citizenship of every defendant. *See Palmer v. Hospital Authority of Randolph County*, 22 F 3d 1559, 1564 (11th Cir. 1994).

   ***i.     Builders is a citizen of Alabama.***

26.     For purposes of determining diversity of citizenship, "a limited liability company is a citizen of any state of which a member of the company is a citizen." *Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, LLC*, 374 F.3d 1020, 1022-23 (11th Cir. 2004). Therefore, to sufficiently allege the citizenship of an LLC, "a [removing] party must list the citizenships of all the members of the limited liability company." *Id.* at 1022. "[T]he Court must assess the citizenship of each of the LLC's members and submembers until the Court is left with only individuals or corporations." *Hensley v. Westin Hotel*, 2023 U.S. Dist. LEXIS 55965, at *7 (N.D. Ga. Mar. 30, 2023) (citing *Rolling Greens*, 374 F.3d at 1022).

27.     Builders is an Alabama limited liability company, and Builders' Registered Office is located at 3221 Morgan Road, Mobile, Alabama 36605. [See Exhibit I – Builders Articles of Organization]. Builders was formed and organized on March 25, 2015. [Id.]. Sherell Davis and Ryan Davis are identified as the members and organizers of Builders, and Sherell Davis also serves as Builders' manager and Registered Agent. [Id.].

28.     The same Morgan Road, Mobile address also serves as the Registered Office for Ryan Davis & Associates, LLC ("RDA"). [See Exhibit J – RDA Alabama Secretary of State Information Page]. RDA was formed and organized on May 15, 2015, and just as with Builders, Sherell Davis is designated as RDA's Registered Agent. [Id.]. Both Ryan Davis and Letitia Davis,

who served as the contact point for Builders during the investigation and handling of the Claim, are identified as the members of RDA. [Id.].

29.     Sherell Davis, Ryan Davis, and Letitia Davis are residents of the State of Alabama. Sherell Davis resides at 1054 Persimmon Street, Mobile, Alabama 36603. [See Exhibit K – Mobile County Property Records for 1054 Persimmon Street]. Ryan Davis and Letitia Davis both reside at 3221 Morgan Road, Mobile, Alabama 36605. [See Exhibit J; Exhibit L – FastPeopleSearch.com Results for Ryan Davis]. Upon information and belief, Sherell Davis, Ryan Davis, and Letitia Davis are the members of Builders, reside in Alabama, intend to stay in Alabama, are domiciled in Alabama, and are therefore citizens of Alabama. As a limited liability company, Builders takes on the citizenships of its individual members. *See Rolling Greens*, 374 F.3d at 1022-23. Accordingly, Builders is a citizen of the State of Alabama.

### ii.     *Scottsdale is a citizen of Ohio.*

30.     For the purposes of diversity jurisdiction, a corporation is a citizen of every state in which it is incorporated and of the state where its principal place of business is located. 28 U.S.C. § 1332(c)(1); *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010).

31.     Defendant Scottsdale is a company organized under the laws of the State of Ohio with its principal place of business in Ohio. Accordingly, Scottsdale is a citizen of the State of Ohio.

### iii.     *The citizenship of the Fictitious Defendants should be disregarded, as they are defendants sued under fictitious names.*

32.     "In determining whether a civil action is removable on the basis of [diversity jurisdiction], the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. § 1441(b)(1). "Even if 'the fictitious defendants were likely' not diverse, their citizenship must 'be disregarded for purposes of diversity jurisdiction.'" *Smith v. Comcast Corp.*, 786 F. App'x

935, 939 (11th Cir. 2019) (quoting *Walker v. CSX Transp. Inc.*, 650 F.3d 1392, 1395 n.11 (11th Cir. 2011)). There is "a limited exception to this rule when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage,'" *Richardson v. Johnson*, 598 F.3d 734 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1215-16 (11th Cir. 1992)), but only when the complaint "adequately describe[s] the person to be sued so that the person could be identified for service." *Dean*, 951 F.2d at 1215 n.6.

33.     Builders also brought this action against the Fictitious Defendants, but the Complaint offers no description of the Fictitious Defendants and the Circuit Court of Mobile County has not reported service of the Complaint and Summons on any of the Fictitious Defendants. [Underline]See[/Underline] Exhibit A]. Accordingly, the citizenship(s) of the Fictitious Defendants should be disregarded for purposes of diversity jurisdiction.

34.     Because Builders is a citizen of the State of Alabama and Scottsdale is a citizen of the State of Ohio, there is complete diversity between these parties.

35.     Builders has also named one Alabama-based corporation, Pilger, as a defendant to this action. However, Pilger has been fraudulently joined to defeat diversity and its citizenship should be ignored for diversity purposes.

**C.     Pilger Has Been Fraudulently Joined as a Defendant and Its Citizenship Should Be Ignored for Diversity Jurisdiction Purposes.**

36.     Generally, "[d]iversity jurisdiction requires complete diversity; every plaintiff must be diverse from every defendant." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287 (11th Cir. 1998). However, "[f]raudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Id*. This occurs "[w]hen a plaintiff names a non-diverse defendant solely in order to defeat federal diversity jurisdiction," in which case "the district court must ignore the presence of the non-diverse defendant and deny any motion to

remand the matter back to state court." *Henderson v. Wash. Nat. Ins. Co.*, 454 F.3d 1278, 1281 (11th Cir. 2006). "The plaintiff is said to have effectuated a 'fraudulent joinder' and a federal court may appropriately assert its removal diversity jurisdiction over the case." *Id.* (citing *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997)).

37.     To establish fraudulent joinder in a removal case, "the removing party has the burden of proving that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court." *Crowe*, 113 F.3d at 1538. "[T]he proceeding appropriate for resolving a claim of fraudulent joinder is similar to that used for ruling on a motion for summary judgment under Fed. R. Civ. P. 56(b)," and "[t]he federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." *Crowe*, 113 F.3d at 1538.

38.     Although the removing defendant bears the burden of proving that a plaintiff seeking remand could not possibly establish a cause of action against a resident defendant, they are not required to establish *absolute* impossibility. *Legg v. Wyeth*, 428 F.3d 1317, 1325 n.5 (11th Cir. 2005). Instead, the test is whether there is no *reasonable* possibility that the plaintiff has a viable claim against the nondiverse defendant, which is at the very least "more than such a possibility that a designated residence can be hit by a meteor tonight." *Id.*

39.     Here, Builders has only asserted claims against Pilger for negligence and negligent training, hiring, and supervision. [See Exhibit A – Complaint]. Accordingly, if Builders has no reasonable possibility of prevailing on these claims, Pilger has been fraudulently joined and complete diversity is present.

40.    In Count III of the Complaint, Builders generally asserts that Pilger "had a duty to reasonably assist [Builders] with [Builders'] Claim once it took steps, by and through its agents, representatives and/or employees, to so assist [Builders], and after agents, representatives, and/or employees of [Pilger] made representations to [Builders] on behalf of [Pilger] that it was so assisting," and that Pilger "breached said duty when it failed to reasonably assist [Builders] with [its] Claim." [Id. at ¶¶ 51-52].

41.    Similarly, in Count IV, Builders contends that Pilger "had a duty to [Builders] as its customer[] to use reasonable practices for hiring, training, and supervision of its employees, assigns, contractors, representatives, and/or agents," which Pilger allegedly breached "when it allowed one or more such personnel to fail to assist [Builders] and/or manage [Builders'] Claim in a reasonable manner." [Id. at ¶¶ 56-57].

42.    Builders' Complaint offers virtually no factual detail regarding what such a duty to assist with Builders' Claim would entail or how Pilger failed to reasonably assist Builders with its Claim. However, Builders does provide a sequence of the alleged events underpinning its claims:

      a.    At some time "[d]uring the effective term of the Insurance Policy," Builders "reported a claim . . . to Scottsdale and/or Agency."

      b.    Pilger then "made representations to [Builders] that [Pilger] was communicating with Scottsdale regarding's Claim."

      c.    Subsequently, "[h]owever, Scottsdale . . . failed to timely or adequately or investigate [Builders'] Claim."

      d.    Because of Scottsdale's delay in investigating Builders' Claim, Builders "took steps to mitigate damages to the Insured Property."

       e.      After Builders began mitigation work on the Subject Property, Scottsdale "disclaimed [Builders'] Claim, allegedly in part due to 'the need to inspect prior to repairs to confirm damages.'"

[Id. at ¶¶ 16, 19-22].

43.     "Where a plaintiff fails to satisfy an essential element of her prima facie case, there can be no possible claim against that defendant and a finding of fraudulent joinder is appropriate." *Hare v. Allstate Prop. & Cas. Ins. Co.*, 2020 U.S. Dist. LEXIS 173559, at *7 (S.D. Ala. Sept. 22, 2020). Under Alabama law, the elements of a negligence claim are: "(1) existence of a duty on the part of the defendant; (2) a breach of that duty; (3) existence of a causal relationship between the defendant's conduct and the plaintiff's injury; and (4) a resulting injury to the plaintiff." *Chatman v. City of Prichard*, 431 So. 2d 532, 533 (Ala. 1983). Moreover, a claim for negligent hiring, training, or supervision "is established by showing that (1) the employer hired, trained, or supervised an employee with an incompetency; (2) the employer knew of the incompetency or would have learned of it by exercising due care; and (3) the employee caused the plaintiff harm due to the incompetency." *Motley v. Express Servs.*, 386 So. 3d 766, 2023 Ala. LEXIS 75, at *9 (Ala. 2023).

44.     The basis for Builders' claims against Pilger, succinctly, is that Builders reported its Claim to Pilger "[d]uring the effective term of the Insurance Policy"; Pilger had a duty to "reasonably assist [Builders] with [its] Claim"; Pilger breached that duty (somehow); and Builders was harmed because of that breach. [Exhibit A – Complaint].

45.     "Damages are an essential element of [Builders'] tort [claims]," and "[p]roof of damage [is] an essential part of [Builders'] case." *Davis v. Hanson Aggregates Se., Inc.*, 952 So. 2d 330, 335 (Ala. 2006). Indeed, "[t]he rule is well settled that one cannot recover damages for the

negligence of another without proving that he has been damaged and the amount of those damages," and negligence in the abstract will not do. *Gibson v. Union Camp Corp*., 519 So. 2d 1355, 1355 (Ala. Civ. App. 1987).

46.     Builders does not tie any damages to its claims against Pilger specifically, but Builders' Complaint identifies only two sources of injury animating this litigation. First, Builders alleges that due to the delay in the investigation and handling of its Claim, it "took steps to mitigate damages to the Insured Property." [Id. at ¶ 21]. Second, Builders asserts that its Claim was wrongly denied by Scottsdale and that it is entitled to coverage under the Policy. [Id. at ¶ 24].

### i.   *Builders' claims against Pilger are barred by Alabama's two-year statute of limitations for negligence actions.*

47.     Obviously, Builders' claims for negligence and negligent training or supervision set off some statute-of-limitations alarm bells, as such claims are subject to a two-year statute of limitations and Builders' claims pertain to a Loss that occurred more than three years ago. *See* Ala. Code § 6-2-38(l); *Boyce v. Cassese*, 941 So. 2d 932, 945 (Ala. 2006) ("[N]egligence and wantonness claims are governed by two-year statute of limitations."); *Chadiwala v. Pate Constr. Co*., 889 So. 2d 540, 544-45 (Ala. 2004) (holding that negligent supervision claim was "barred by the two-year statute of limitations"); *Mardis v. Robbins Tire & Rubber Co.*, 669 So. 2d 885, 887-88 (Ala. 1995) (stating that negligent training claim was governed by two-year statute of limitations).

48.     Under Alabama law, a negligence claim accrues when "the force wrongfully put in motion produces injury, the invasion of personal or property rights occurring at that time." *Stephens v. Creel*, 429 So. 2d 278, 281 (Ala. 1983) (quoting 51 Am. Jur. 2d Limitation of Actions § 135 (1970)).  Stated differently, the limitations period for a negligence claim begins to run "when the plaintiff can first maintain the action, regardless of whether the full amount of damage is

apparent at the time of the first injury." *Booker v. United Am. Ins. Co*., 700 So. 2d 1333, 1339 (Ala. 1997) (citing *Henson v. Celtic Life Ins. Co*., 621 So. 2d 1268, 1274 (Ala. 1993)). Further, and importantly, "there is no 'discovery rule' for negligence claims that would toll the running of the statute of limitations from the time the cause of action was 'discovered' by the plaintiff." *Singer Asset Fin. Co. v. Connecticut Gen. Life Ins. Co*., 975 So. 2d 375, 382 (Ala. Civ. App. 2007).

49.      "Accordingly, the lodestar for determining when the limitations period began to run on [Builders'] negligence claim[s] is the time when 'actual damage . . . , however slight,' became apparent." *Easterling v. Kolbe & Kolbe Millwork Co*., 2012 U.S. Dist. LEXIS 136687, at *6 (M.D. Ala. Sep. 25, 2012) (quoting *Kelly v. Shropshire*, 75 So. 291, 292 (1917)). Builders' claims against Pilger are thus untimely if the first injury underpinning those claims occurred more than two years prior to the filing of the Complaint, or August 6, 2022. *See* Ala. Code § 6-2-38(l).

50.      Starting with the mitigation work performed on the Subject Property, during Scottsdale's investigation of the Claim, Builders provided Scottsdale with invoices and receipts from various contractors and suppliers for repairs to the Subject Property that were completed between July and December 2021. [See Exhibit H]. Included in these materials is an invoice from Wilson Construction dated July 23, 2021, for debris removal and the tarping of the Subject Property's roof. [See id.]. In addition, Builders provided a payment confirmation from Alabama Power dated October 5, 2021, and per Builders' annotations, this expense was for operating a dehumidifier at the Subject Property. [See id.]. The latest of these materials is a receipt from Home Depot for painting materials, which is dated December 15, 2021. [See id.].

51.      According to Builders' Complaint, Builders feels that it was performing mitigation work unnecessarily given the Policy, which under its theory of liability is "the time of the first legal injury" and when Builders was "entitled to maintain the action." *See Long v. Jefferson Cnty*.,

623 So. 2d 1130, 1137 (Ala. 1993). However, the materials discussed above demonstrate that Builders suffered these damages approximately three (3) years before the filing of its Complaint, well outside the applicable limitations period for Builders' claims against Pilger. And even if Builders were to claim subsequent damages as a result of Pilger's alleged negligence in rendering assistance with the Claim, Builders' claims against Pilger would still be untimely as, again, "[i]t is well settled that a negligence cause of action accrues when the plaintiff can first maintain the action, regardless of whether the full amount of damage is apparent at the time of the first injury." *Booker*, 700 So. 2d at 1339, "however slight" that injury may have been. *Easterling,* 2012 U.S. Dist. LEXIS 136687, at *6.

52.     Even assuming that Builders' Complaint were to advance entirely separate claims against Pilger based upon the eventual denial of Builders' Claim, those claims would fare no better. In its letter denying Builders' Claim, Scottsdale provided two reasons for the denial: (1) no damage caused by a covered cause of loss could be identified, given the passage of time since the date of the Loss and the completion of repairs before the Claim was reported; and (2) the Claim was not reported until over two years after the reported date of Loss on August 1, 2021. [See Exhibit M – Scottsdale Denial Letter].

53.     As an initial matter, Builders alleges that the basis for the denial of its Claim was the result of Scottsdale's conduct, and Scottsdale's only. Specifically, Builders' Complaint asserts that "*Scottsdale* . . . failed to timely or adequately investigate [Builders'] Claim," and "[c]onsequently, [Builders] took steps to mitigate damages to the Insured Property," but that "*Scottsdale* later disclaimed [Builders'] Claim, allegedly in part due to 'the need to inspect prior to repairs to confirm damages.'" [See Exhibit A – Complaint at ¶¶ 20-22] (emphasis added). In other words, according to Builders' Complaint, the denial of Builders' Claim was the result of

Scottsdale's alleged dilatoriness in proceeding with its investigation rather than Pilger's alleged failure to "reasonably assist [Builders] with [its] Claim" – whatever that failure may have been. [Id. at ¶ 52].

54.     Even if Builders had alleged some causal connection between Pilger's conduct and its alleged damages, any such claim would still be untimely. *Oliver v. M/V Barbary Coast*, 2012 U.S. Dist. LEXIS 98176, at *13 (S.D. Ala. June 13, 2012). In *Oliver*, the plaintiff-insured alleged that it provided notice of its loss to the defendant-broker in February, 2010, but that the broker failed to timely transmit the notice to the insurer. The insured then brought claims for negligence and wantonness against the broker on April 6, 2012, asserting that the broker failed to make a claim upon receiving timely notice. The court explained that "because [the insured's] theory of liability as to these claims is that [the broker] failed to transmit or otherwise act on the notice of loss delivered to it in February, 2010 . . . these claims accrued sometime in February, 2010," which was "the time of the first legal injury" and "when [the insureds] were 'entitled to maintain the action.'" *Id.* (quoting *Long v. Jefferson Cnty.*, 623 So. 2d 1130, 1137). Accordingly, despite the insured's argument that "a question remain[ed] as to when [the broker] should have transmitted that notice to [the insurer]," the court held that the complaint was filed "well after the two-year deadline" and the claims for negligence and wantonness were "barred by the applicable statute of limitations." *Id.*; *cf. Alverson v. Auto-Owners Ins. Co.*, 2007 U.S. Dist. LEXIS 10770, at *7 (S.D. Ala. Feb. 6, 2007) (holding that claims against agent for negligent failure to assist with claim for damage from Hurricane Ivan, which "struck on or about September 16, 2004" was not time-barred because "[t]he complaint was filed on September 21, 2006" and "plaintiff's negligence claim [wa]s based on conduct that occurred weeks and months after the insured loss").

55.     Here, the text messages between Letitia Davis of Builders and Christie of Pilger, discussed above, show that Builders first informed Pilger of the Loss on or before July 29, 2021. [See Exhibit F]. These exchanges also reflect Builders' understanding that Pilger had either not reported the Loss to Scottsdale or had not made arrangements with Scottsdale for the handling of Builders' Claim in September 2021. [See id.]. And although Christie apparently never followed up with or responded to Builders, this "fail[ure] to communicate further would only add to a reasonable person's notice that he or she needed to take additional action." *See Ferguson v. Aon Risk Servs. Co*., 2024 U.S. Dist. LEXIS 89249, at *18 (N.D. Ill. May 17, 2024) (holding that claims based on insurance broker's failure to provide notice of insurance claim were untimely when plaintiff was aware of those issues years before filing suit).

56.     It is also clear from the text exchanges that Builders had yet to receive any follow up or payment from Scottsdale in September 2021, even though the Policy issued to Builders provides that Scottsdale "will give notice of [its] intentions within 30 days after [Scottsdale] receive[s] the sworn proof of loss" and "will pay for covered loss or damage within 30 days after [Scottsdale] receive[s] the sworn proof of loss, if [Builders] ha[s] complied with all terms of th[e] Coverage Part." [See Exhibit B at 86]. Accordingly, to the extent that Builders seeks to hold Pilger liable for a negligent failure to report the Loss to Scottsdale, such a claim would have accrued – at the latest – in September 2021. *See Oliver*, 2012 U.S. Dist. LEXIS 98176, at *13. If Builders wished to hold someone (other than itself) responsible for a failure to provide timely notice of the Loss or other deficiencies in the reporting of the Claim, that was the time. The filing of Builders' Complaint on August 6, 2024 – nearly three years later – is far outside the applicable limitations period and its claims against Pilger are thus time-barred. *See* Ala. Code § 6-2-38(l).

> ii.    *Even if Builders' claims against Pilger were timely, Alabama law does not support the imposition of a nebulous "duty to assist" on Pilger.*

57.    Moreover, the Alabama Supreme Court has "consistently refused to recognize a cause of action for the negligent handling of insurance claims," *Kervin v. Southern Guar. Ins. Co*., 667 So. 2d 704, 706 (Ala. 1995), and this principle applies just as well to insurance agents and brokers as it does to insurance companies. *See, e.g., Oliver*, 2012 U.S. Dist. LEXIS 98176, at \*16 (applying *Kervin*, 667 So. 2d at 706); *see also Sellers v. Modern Woodmen of Am*., 2009 U.S. Dist. LEXIS 144627, at \*10 (N.D. Ala. Sep. 21, 2009) (finding fraudulent joinder where "[p]laintiffs cite[d] no authority for the proposition that an agent's failure to provide service to an insured, by itself, can support a cause of action for negligence").

58.    Although previous decisions by the Alabama Supreme Court implied, in passing, that an insurance broker could voluntarily assume a duty to help an insured with a claim, *Pate v. Rollison Logging Equip*., 628 So. 2d 337 (Ala. 1993), the court has since clarified that "insurance agents generally are not liable for actions other than obtaining insurance coverage for their insureds unless a special relationship has been established between the parties." *Somnus Mattress Corp. v. Hilson*, 280 So. 3d 373, 381 (Ala. 2018) (quoting 3 Steven Plitt et al., *Couch on Insurance* § 46:38 (3d ed. 2011)). In *Somnus*, the insured argued that its agent owed a duty to advise it concerning the adequacy of its insurance coverage. *Id*. at 382. Although the court acknowledged that an insurance agent or broker can voluntarily undertake a duty to *procure* insurance, it explained that "procuring insurance requested by a client and advising a client about all the types of insurance coverage the client may possibly need are two entirely different duties." *Id*. at 383 (distinguishing *Highlands Underwriters Insurance Co. v. Elegante Inns, Inc*., 361 So. 2d 1060, 1065 (Ala. 1978)). And because the insured failed to identify an express agreement, additional compensation, or "the

existence of a long-established relationship of entrustment" between the insured and its agent, "the types of elements that trigger such a duty were not present in this case." *Id*. at 385.

59.     Considering *Somnus*, Alabama's federal courts have explained that if "there has been no allegation of a special relationship, separate agreement, additional compensation, or affirmative misrepresentation" that would support the assumption of a duty by an insurance agent outside the procurement context, the agent has been fraudulently joined. *See Franklin Cnty. Comm'n v. Madden*, 2019 U.S. Dist. LEXIS 83570, at *8 (N.D. Ala. May 17, 2019) (finding that agent did not have "a duty to inform plaintiff about the adequacy of its insurance coverage" and was thus fraudulently joined); *Goostree v. Liberty Nat'l Life Ins. Co.*, 2019 U.S. Dist. LEXIS 124129, at *11 (N.D. Ala. July 25, 2019) (finding fraudulent joinder of agent who plaintiff alleged "owe[d] a duty of fair dealing" to plaintiff where the "complaint fail[ed] to provide any allegations of a special relationship" and "[t]he only allegations of a special relationship come from Plaintiffs' jurisdictional response").

60.     Here, just as in *Somnus*, Builders does not allege that Pilger undertook or somehow failed to perform a duty to provide coverage. Instead, Builders asserts that Pilger "assumed the duty of assisting [Builders] with [Builders'] Claim," specifically to "communicat[e] with Scottsdale regarding Builders' Claim." [Exhibit A – Complaint at ¶ 19]. However, "because [Builders] failed to plead a special relationship with [Pilger], as an insurance agent" or any other facts that could possibly support such a voluntary duty, "[Pilger] owes no duty to [Builders]," and Builders cannot establish this essential element of its claims against Pilger. *See Goostree*, 2019 U.S. Dist. LEXIS 124129, at *11-12.

**C.    The Amount-in-Controversy Requirement is Satisfied.**

61.    Pursuant to 28 U.S.C. § 1332(a)(1), the amount in controversy must exceed the sum or value of $75,000, exclusive of interest and costs. The longstanding federal rule for determining the amount in controversy is to first examine the plaintiff's complaint.  *See, e.g., Lindsay v. American General Life & Accident Ins. Co.*, 133 F. Supp. 2d 1271, 1275 (N.D. Ala. 2001) (citations omitted). Although Builders does not quantify the amount of damages it seeks in the Complaint, it does allege that it is entitled to "all benefits due under the Insurance Policy," [Exhibit A – Complaint at ¶ 27], and "requests compensatory damages, economic losses, mental anguish, contract damages, [and] punitive damages" for Scottsdale's alleged failure to remit insurance proceeds paid under the Policy to Builders. [Id. at ¶ 49].

62.    The Eleventh Circuit has explained that when a plaintiff makes an unquantified demand for damages in state court, "a removing defendant must prove by a preponderance of the evidence that the amount in controversy more likely than not exceeds the jurisdictional requirement.'"  *Roe v. Michelin N. Am., Inc.*, 613 F.3d 1058, 1061 (11th Cir. 2010) (*quoting Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1357 (11th Cir. 1996)).  In some cases, this burden will require the removing defendant to provide additional evidence, but in other cases "it may be 'facially apparent' from the pleading itself that the amount in controversy exceeds the jurisdictional minimum, even when 'the complaint does not claim a specific amount of damages.'"  *Roe*, 613 F.3d at 1061 (*quoting Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 754 (11th Cir. 2010) (citations omitted)).

63.    If a defendant alleges that removability is facially apparent from the complaint, "the district court must evaluate whether the complaint itself satisfies the defendant's jurisdictional burden."  *Roe*, 613 F.3d at 1061.  The district court is not bound by the plaintiff's representations,

nor does it have to assume the plaintiff is best able to evaluate the amount of damages sought. *Id.* (*citing Pretka*, 608 F.3d at 771). The Eleventh Circuit Court of Appeals further stated in *Roe* that:

> Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleadings to determine whether it is facially apparent that a case is removable. Put simply, a district court need not "suspend reality or shelve common sense in determining whether the face of a complaint establishes the jurisdictional amount." Instead, courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements.

*Id.* at 1061-62 (citations omitted). The rationale for this rule is in part to prevent plaintiffs from evading a court's statutory right to hear a case through artful pleading that does not specify the value of the claimed damages. *Id.* at 1064.

64.     Recent cases are instructive in determining the amount in controversy where, as here, a plaintiff fails to make a specific damages demand in the complaint. One such case explained the impact of amended 28 U.S.C. § 1446, stating "[w]hen Congress enacted this most recent amendment to § 1446, it did not intend to require the court to which the case is removed to do more than to exercise reasonable judgment, based on the allegations in the complaint, and other undisputed facts." *Smith v. State Farm Fire & Cas. Co.*, 868 F. Supp. 2d 1333, 1334 (N.D. Ala. 2012). In *Smith*, the court went on to state that where the complaint does not contain an *ad damnum* clause, "the court is allowed reasonable deductions and extrapolations." *Id.* at 1335. The *Smith* court further stated "[t]his court is informed and verily believes" Congress amended § 1446 "to slow down, if not to prevent," the remand of diversity cases "where there is no *ab* [*sic*] *damnum* clause, but where the parties and the court know from their exercise of good sense and experience that the claim exceeds $75,000." *Id*. Perhaps more importantly, the *Smith* court stated the following:

> The court is willing to go so far as to inform plaintiffs like Smith, who want to pursue claims against diverse parties in a state court seeking unspecified damages of various kinds, such as punitive damages and emotional distress, **must in their complaint formally and expressly disclaim any entitlement to more than $74,999.99, and categorically state that plaintiff will never accept more.** Otherwise, a plaintiff will find herself in a federal court, which is now saddled by Congress with a new and heavy burden.

*Id.* (emphasis added).  Finally, the *Smith* court noted in a case such as this one, if the defendant had waited for limited discovery in state court to prove the plaintiff's claim exceeded $75,000, the defendant would be facing a motion to remand for untimely removal rather than for lack of subject-matter jurisdiction.  *Id.* at 1334-35.

65.     Here, Builders does not make a specific demand for damages in its Complaint and simply requests "all cognizable damages under the law" in the "Wherefore" paragraphs following each Count of the Complaint. [See Exhibit A – Complaint at ¶¶ 31, 49, 54, 59]. However, Builders fails to disclaim the right to, or acceptance of, damages exceeding $74,999.99.

66.     Moreover, it is facially apparent from the Complaint that the amount in controversy more likely than not exceeds $75,000. Builders alleges that the Subject Property incurred damages that "would have been confirmed by Scottsdale had it timely or adequately investigated [Builders'] Claim," but that "Scottsdale has not paid [Builders'] Claim or otherwise compensated [Builders] pursuant to the Insurance Policy." [Id. at ¶¶ 23-24]. The report completed by Robert Holman of PASI after his investigation of the Subject Property identifies the replacement cost value for repair work to the Subject Property's roofing, flooring, ventilation systems, and other structural components as $86,971.99. [See Exhibit G; Exhibit N – PASI Estimate]. Standing alone, this amount amply satisfies the amount in controversy necessary to establish federal jurisdiction.

67.     In addition, the total value of the Subject Property is critical to assess the amount in controversy given that Builders also seeks recovery of "economic losses," presumably stemming

from a diminution in the value or the loss of use of the Subject Property. [See Exhibit A – Complaint at ¶ 49]. Also included in the PASI report is a valuation of the Subject Property, which estimated the replacement cost for the Subject Property as $734,199.90. [See Exhibit O – PASI Valuation]. Moreover, the Subject Property has an appraisal value of $349,000.00 according to the 2024 Mobile County property tax records. [See Exhibit P – Mobile County 2024 Property Tax Records]. Accordingly, even a relatively small percentage diminution or interference with Builders' use of the Subject Property would carry significant monetary value, to say nothing of the unquantified additional damage to the Subject Property Builders also seeks recovery for. It is therefore reasonable for this Court to infer that the amount in controversy exceeds $75,000, especially in light of the other unquantified damages identified in the Complaint.

68.     Further, when ascertaining the amount in controversy in a particular case, "state law is relevant to this determination insofar as it defines the nature and extent of the right plaintiff seeks to enforce.  This includes applying state law rules regarding the applicable measure of damages and the availability of special and punitive damages."  *Lindsay*, 133 F. Supp. 2d at 1277. It is also well established that "[p]unitive damages must be considered when determining the jurisdictional amount in controversy in diversity cases." *Rae v. Perry*, 392 Fed. Appx. 753, 755 (11th Cir. 2010) (citing *Holley Equip. Co. v. Credit Alliance Corp*., 821 F.2d 1531, 1535 (11th Cir. 1987) ("punitive damages must be considered . . . unless it is apparent to a legal certainty that such cannot be recovered")). Builders' bad faith claim, if proven, would allow recovery of punitive damages. *Gulf Atlantic Life Ins. v. Barnes*, 405 So.2d 916 (Ala. 1981)*.*

69.     In Alabama, a punitive damages award can be up to three times the compensatory damages that are awarded or $500,000, whichever is greater. *See* Ala. Code § 6-11-21 ("[I]n all civil actions where an entitlement to punitive damages shall have been established under applicable

laws, no award of punitive damages shall exceed three times the compensatory damages or five hundred thousand dollars ($500,000), whichever is greater."). Also, in evaluating the amount in controversy for jurisdictional purposes, a punitive damage award of "slightly more than double the compensatory damages" has been described as "uncontroversial." *Blackwell v. Great Am. Fin. Res., Inc.*, 620 F. Supp. 2d 1289, 1291 (N.D. Ala. 2009); *accord Hawes v. Bailey*, 2018 U.S. Dist. LEXIS 90408, at *7-8 (N.D. Ala. May 31, 2018) ("Here, the amount of compensatory damages at issue exceeds $22,676.96. An award of punitive damages in an amount of $52,323.05 would be slightly more than double, but far less than triple, the compensatory damages on Plaintiff's medical expenses alone . . . Such an award would be 'uncontroversially within the limits of the Due Process Clause' . . . [and] the federal jurisdictional requirements with regard to the amount in controversy are met.") (quoting *Blackwell*, 620 F. Supp. at 1291); *Mid-South Tax Credit Partners I v. Junkin*, 2019 U.S. Dist. LEXIS 172871, at *2 n.2 (N.D. Ala. Sep. 10, 2019) (same).

70.    Accordingly, because Builders' Complaint seeks recovery for damages to the Subject Property, which have been estimated in the amount of $86,971.99, [see Exhibit N], Builders has "uncontroversially" placed an additional $173,943.98 in punitive damages at issue.

71.    Moreover, under Alabama law, "there is a statutory right to interest on the amount payable under any type of insurance policy." *LeFevre v. Westberry*, 590 So. 2d 154, 163 (Ala. 1991) (*citing* Ala. Code § 8-8-8, and *Thomas v. Liberty Nat'l Life Ins. Co*., 368 So. 2d 254 (Ala. 1979)). Should Builders prevail on its breach of contract claim, Ala. Code § 8-8-8 allows it to recover pre-judgment interest "from the date the loss should have been paid to the date of judgment." *First Ala. Bank, N.A. v. First State Ins. Co*., 899 F.2d 1045, 1065 (11th Cir. 1990) (*citing Ala. Farm Bureau Mut. Cas. Ins. Co. v. Williams*, 530 So. 2d 1371, 1378 (Ala. 1988)). And under Ala. Code § 8-8-1, "[w]here no written contract controls the interest rate, as in this case, the

legal rate of pre-judgment interest is six percent per annum." *Rhoden v. Miller*, 495 So. 2d 54, 58 (Ala. 1986) (applying Ala. Code § 8-8-1).

72.     The PASI report and estimate of the damages to the Subject Property was prepared on September 7, 2023. [See Exhibit G; Exhibit N]. Accordingly, using this date as "the date the loss should have been paid," *First Ala. Bank, N.A.*, 899 F.2d at 1065, the accumulated prejudgment interest on the amount Builders alleges it should have been paid under the Policy would be $5,275.51,[1] which is additional evidence that the amount in controversy exceeds $75,000.00.

73.     Based upon Builders' own description of the damages as stated in the Complaint, combined with the amount of punitive damages Builders has placed at issue, the amount in controversy exceeds the jurisdictional requirement of $75,000, exclusive of interest and costs. Removal is therefore proper under 28 U.S.C. § 1332 and § 1446.  See *Lowery v. Alabama Power Co.*, 483 F.3d 1184 (11th Cir. 2007).

### III.  **TIMELINESS**

74.     This removal is timely filed within thirty (30) days from when Scottsdale was served with the Complaint. *See* 28 U.S.C. § 1446(b)(3).

### IV.  **CONCLUSION**

75.     Scottsdale has satisfied all procedural requirements with respect to timing, consent, diversity of citizenship, and the amount in controversy and removal is proper pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

---

[1] That amount is computed as follows: $86,971.99 (the total sum of the PASI estimate attached as Exhibit N) x 0.06 (the applicable statutory rate of interest per annum) x 369 (the number of days from September 7, 2023 to today's date) / 365 (the number of days in a year) = $5,275.51. *See Murray v. Holiday Isle, LLC*, 2009 U.S. Dist. LEXIS 101740, at *6 n.2 (S.D. Ala. Oct. 29, 2009) (providing formula for calculating prejudgment interest).

76.     Scottsdale provides prompt notice of its filing of this Notice of Removal to all parties and to the Circuit Court of Mobile County, Alabama, by filing a State Court Notice of Removal, attached as Exhibit Q, together with a copy of this Notice of Removal, in the Circuit Court of Mobile County, Alabama, and by serving same on all parties as provided in 28 U.S.C. §1446(d).

WHEREFORE, PREMISES CONSIDERED, Defendant prays the filing of this Notice of Removal, the filing of written notice to Plaintiff, and the filing of a copy of this Notice of Removal with the Clerk of the Circuit Court of Mobile County, Alabama, shall justify removal of said suit to this Honorable Court.

**ORAL ARGUMENT REQUESTED IF DEEMED NECESSARY BY THE COURT**

**Respectfully submitted** on September 10, 2024.

/s/Allan S. Jones
ALLAN S. JONES (asb-4458-e37a)
KEITH S. RIVERS (asb-
NATHANIEL F. OEHL (asb-2789-h90i)
Counsel for Scottsdale Insurance Company

**OF COUNSEL:**
**CARR ALLISON**
100 Vestavia Parkway
Birmingham, AL 35216
Telephone: (205) 822-2006
Facsimile: (205) 822-2057
asjones@carrallison.com
pfranklin@carrallison.com
noehl@carrallison.com

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of Court using the CM/ECF System on September 10, 2024, which will send notification of such filing to all counsel of record.

/s/Allan S. Jones
OF COUNSEL